720 So.2d 82 (1998)
STATE of Louisiana
v.
Samuel ALEXANDER sentenced as "Samuel Alexander".
No. 97-KA-1199.
Court of Appeal of Louisiana, Fifth Circuit.
September 29, 1998.
Rehearing Denied November 17, 1998.
*84 Paul D. Connick, Jr., District Attorney, Alison Wallis, Appellate Counsel, Terry M. Boudreaux, Research & Appeals, Caren Morgan, Trial Counsel, Gretna, for plaintiff-appellee.
Katherine M. Franks, Staff Appellate Counsel, Louisiana Appellate Project, Baton Rouge.
Before GRISBAUM and DALEY, JJ., and NESTOR L. CURRAULT, Jr., J. Pro Tem.
NESTOR L. CURRALT, Jr., Judge Pro Tem.
The Jefferson Parish District Attorney filed a bill of information charging the defendant with illegal possession of stolen things valued at over $500.00. At the arraignment, defendant pled not guilty. Following trial on October 20, 1997 and October 21, 1997, a unanimous jury found the defendant guilty as charged. The defendant filed a motion for post verdict judgment of acquittal, which the trial court denied.
On October 29, 1997, the defendant was sentenced to serve three years imprisonment at hard labor, which was suspended. The trial judge placed defendant on active probation for three years with special conditions, and also ordered the defendant to serve one year of home incarceration. Subsequently, the trial court ordered the defendant to pay $1,290.00 in restitution to the victims. The defendant filed a timely motion for appeal, which the trial judge granted.

FACTS AND TESTIMONY
At trial, Joseph and Paula Kelly testified that their 1994 Dodge truck was stolen on April 5,1997 when they went to an 8:20 p.m. movie at the Belle Promenade Mall. Mr. Kelly testified that his wife's purse was under the seat and that his tools were behind *85 the seat. Mrs. Kelly testified that she informed the mall's security office about the incident, and the police were called. The Kellys reported the theft to the police officer who responded to the call.
Mrs. Kelly testified that the officer suggested that they look for the truck at various locations on the West Bank where stolen vehicles were frequently abandoned. Mr. and Mrs. Kelly, along with Mr. Kelly's brother-in-law, left the mall and searched for the stolen truck. While they were driving around, the Kellys spotted their truck near the Fischer Housing Project. They followed the truck for some time, and eventually pulled alongside of it at a red light on the corner of Berman Highway and Carol Sue. Mr. Kelly testified that the driver was "crunched down" in the truck, as if to hide. The driver of the truck then looked over at Mr. Kelly, and Mr. Kelly stared at him. Mr. Kelly testified that as soon as the driver of the truck saw Mr. Kelly looking at him, the driver sped away. They pursued the truck, but the driver eluded them. Both Mr. and Mrs. Kelly testified that the driver of the truck had a "bush" or "Afro" type hairstyle. Mr. and Mrs. Kelly each identified the defendant in court as the person they had seen driving their truck.
The morning after the theft, Mr. Kelly's brother-in-law telephoned the Kellys and said someone had brought the truck to his home in Harvey. According to Mr. Kelly, the truck's ignition switch was broken, the steering column was damaged, and the truck's passenger window was smashed. Mr. Kelly further testified that all belongings had been removed from the truck. Mr. Kelly went to the apartment complex in Harvey where the truck had been recovered, and started looking around. He located some of his tools, a tinted window shield that came from the truck, and some of his wife's belongings from her purse, including her driver's license. As Mr. Kelly was retrieving his tools, he saw the defendant walk out of one of the adjacent apartments. Mr. Kelly recognized the defendant as the driver of the truck, and notified a police officer on patrol in the neighborhood that the defendant had stolen his truck. The police apprehended the defendant, and Mr. Kelly again identified him as the driver of the truck.
At trial, the defendant presented an alibi defense through his own testimony and that of other witnesses. Iesha Washington testified that the defendant was at her home from 8:00 p.m. on Friday, April 4, 1997, until the morning of Sunday, April 6, 1997. Ms. Washington testified that the defendant did not leave the apartment at any time on April 5, 1997. However, Ms. Washington admitted that the truck was parked in a driveway across from her apartment on Sunday morning. Another defense witness, James Nicks, testified that he was at Ms. Washington's apartment all day on Saturday, April 5, 1997 with the defendant.
Samuel Alexander denied stealing the Kellys' truck. The defendant testified that he was at Iesha Washington's apartment from Friday, April 4, 1997 until Sunday, April 6, 1997. He stated that he left the apartment on Sunday, April 6, 1997 and was arrested later that day.

ASSIGNMENTS OF ERROR ONE AND TWO
By these assignments, the defendant contends that the state's evidence was insufficient to support his conviction of illegal possession of stolen things because the evidence did not prove that the vehicle was an object of theft and that the evidence did not negate the probability of the defendant's misidentification as the perpetrator of this offense.
The often cited standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence, direct and circumstantial, in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hawkins, 96-0766, p. 7 (La.1/14/97), 688 So.2d 473, 479; State v. Snyder, 97-226, p. 12 (La.App. 5 Cir. 9/30/97), 700 So.2d 1082, 1088. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant, that hypothesis *86 falls and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Chester, 97-1001, p. 1 (La.12/19/97), 707 So.2d 973; State v. Hopson, 97-509, p. 3 (La.App. 5 Cir. 11/25/97), 703 So.2d 767, 769.
Samuel Alexander was charged with illegal possession of stolen things valued at over five hundred dollars, a violation of LSA-R.S. 14:69. In order to convict a defendant of this offense, the state must prove, beyond a reasonable doubt, that the defendant (1) intentionally possessed, procured, received or concealed, (2) anything of value, (3) which has been the subject of any robbery or theft, (4) where circumstances indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses and that (5) the value of the items stolen exceeds five hundred dollars. State v. Corkern, 593 So.2d 1259, 1260 (La.1992); State v. Cole, 94-1070, p. 3 (La.App. 3 Cir. 2/1/95), 649 So.2d 1214, 1217; State v. Daniel, 536 So.2d 796, 797 (La.App. 5 Cir.1988).
The defendant first contends that the state's evidence was insufficient to prove that the vehicle was the subject of a theft. The defendant cites State v. Bruce, 472 So.2d 79 (La.App. 5 Cir.1985), in which this Court held that the evidence was insufficient to show that the vehicle in question was the subject of a robbery or theft or to show that defendant knew or should have known that the vehicle had been stolen. While the car in Bruce was listed as stolen with the police and there were stolen license plates on the car, the evidence indicated that the defendant in Bruce had keys to the car. The Bruce court concluded that this evidence was insufficient to prove that the car was stolen, or that the defendant knew or had good reason to know that the car was stolen.
Bruce differs from this case because here, the state introduced evidence to prove that the Kellys' truck was stolen and that Alexander knew or had good reason to know that the truck was stolen. The evidence at trial showed that the truck's passenger window was smashed, the ignition switch had been removed, and the steering column had been vandalized. This Court has held that evidence of a vandalized steering column, combined with a lack of keys when the police found the vehicle, was sufficient to show that an automobile had been stolen, and that the defendant had good reason to know "the vehicle had been illegally taken if in fact he did not earlier steal it himself." State v. Williams, 532 So.2d 1190, 1194 (La.App. 5 Cir.1988). Viewing the evidence in the light most favorable to the prosecution, we find that the state proved beyond a reasonable doubt that the Kellys' truck was the subject of a robbery or a theft and that the defendant knew or had good reason to know that it had been the subject of one of these offenses.
Next, the defendant argues that evidence was insufficient because the probability of misidentification was not negated, and because the identification procedure was unreliable. While defendant filed a motion to suppress the identification, the record reflects that defendant proceeded to trial without obtaining a ruling on the motion. The record also reflects that the defendant failed to object to the identification testimony at trial. A defendant waives all pending motions by permitting trial to proceed without raising the issue that his pretrial motions were neither heard nor ruled upon. State v. Price, 96-680, p. 8 (La.App. 5 Cir. 2/25/97), 690 So.2d 191, 196. Nevertheless, we have carefully reviewed the record and find that the identification of Alexander was neither suggestive, nor unreliable. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Moreover, we find that the state proved beyond a reasonable doubt the identification of Alexander as the perpetrator of this offense. Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Rowan, 97-21, p. 4 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1054. When the key issue in the case is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Bovie, 95-474, p. 5 (La.App. 5 Cir. 11/28/95), 665 So.2d 558, 560.
At trial, both Mr. and Mrs. Kelly identified Alexander as the individual who they saw *87 driving their truck only a short while after it had been stolen. Mr. Kelly testified that he could see the defendant clearly that night, and that he had "stared" at defendant that night. Furthermore, Mr. Kelly testified that he had even seen defendant's "light gold" teeth. Mr. Kelly testified that he had no doubt about his identification of Alexander at the Harvey apartment complex the next day. While the defendant argues that the identification was unreliable because the truck's windows were tinted, Mrs. Kelly testified that the tint was a light, not a dark tint. Finally, both Mr. and Mrs. Kelly testified that they were positive that defendant was the person they saw driving their truck.
After hearing all of the evidence, the jury obviously believed the testimony of Mr. and Mrs. Kelly regarding the identification of the defendant. It is the jury's function to determine the weight of the evidence bearing on the defendant's identification, and it is not the reviewing court's function to re-evaluate the credibility choices and factual findings made by the jury. State v. Lott, 97-1002 (La.App. 5 Cir. 5/27/98), 712 So.2d 289. Viewing the evidence in the light most favorable to the prosecution and recognizing the state's burden to negate any reasonable probability of misidentification, any rational trier of fact could have found beyond a reasonable doubt that Alexander was the perpetrator of the offense. Accordingly, these assignments lack merit.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, Alexander argues that the trial court improperly failed to specify the conditions of his home incarceration and also failed to give him a certificate setting forth the conditions of his home incarceration.
LSA-C.Cr.P. art. 894.2 sets forth the requirements for home incarceration in pertinent part as follows:
A. Notwithstanding any other provision of law to the contrary, a defendant may be sentenced to home incarceration in lieu of imprisonment under the following conditions:
* * * * * *
B. A defendant sentenced to home incarceration shall be supervised and may be subject to any of the conditions of probation.
C. The court shall specify the conditions of home incarceration when it imposes such sentence upon the defendant. The conditions may include any condition reasonably related to implementing or monitoring a sentence of home incarceration, including curfew, electronic or telephone monitoring, home visitation by persons designated by the court, and limitation of the defendant's activities outside of the home.
D. The defendant shall be given a certificate setting forth the conditions of his home incarceration and shall be required to agree in writing to the conditions.
Alexander was originally sentenced to serve one year of home incarceration on October 29,1997. The record reflects that the trial court failed to specify any conditions of home incarceration at this hearing. However, at a probation revocation hearing on February 18, 1998, the trial court ordered the defendant to wear an electronic ankle bracelet.[1] The record further reflects that the defendant's probation was not revoked at this hearing.
According to Article 894.2(C), the home incarceration conditions "may include any condition reasonably related to implementing or monitoring a sentence of home incarceration, including ... electronic ... monitoring." While the trial court did not specify conditions at the defendant's original sentencing, we find that the trial court cured this deficiency when the court subsequently ordered the defendant to wear an electronic ankle bracelet.
While the defendant correctly contends that he did not receive a certificate of conditions of his sentence of home incarceration, *88 we find that defendant has not shown any prejudice. In State v. Price, 583 So.2d 499 (La.App. 3 Cir.1990), the Third Circuit held that the defendant failed to establish prejudice by not receiving the certificate of conditions because the trial judge had informed defendant of his conditions of home incarceration. The Price court noted that as with a certificate of conditions for probation, the purpose of a certificate of conditions for home incarceration is to assure that a defendant has adequate knowledge of a special or unusual condition, the violation of which may result in revocation. State v. Price, 583 So.2d at 501; See also State v. Davis, 480 So.2d 495, 499 (La.App. 5 Cir.1985). Here, the trial judge informed Alexander at the February 18, 1998 hearing that he was to wear the ankle bracelet. Because the defendant was so informed, we find that the defendant has failed to establish that he was prejudiced by not receiving a certificate of conditions for his home incarceration. Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
The defendant contends that the trial court improperly failed to provide a written judgment setting the amount of restitution. At the March 4, 1998 hearing, the defendant and the state stipulated that the amount of restitution in this case was $1,290.00. The trial court ordered the defendant to pay this amount "during the period of probation under the supervision of the probation department."
LSA-C.Cr.P. art. 895.1 provides in pertinent part:
A. (1) When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain. However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from the establishment of the restitution order as a civil money judgment provided for in Subparagraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.
* * * * * *
(3) The court which orders the restitution shall provide written evidence of the order which constitutes the judgment.
The defendant urges that the trial court erred by failing to put into the record written evidence of the order that constitutes judgment setting the amount of restitution. However, this argument is without merit because March 4, 1998 minute entry is written evidence of the trial court's order constituting the judgment.
The defendant further argues that the trial court erred by failing to set a payment schedule. Here, the trial court ordered defendant to pay $1,290.00 in restitution "during period of probation under the supervision of the probation department." According to the Article 895.1(A), "[t]he restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant." (Emphasis added). See also State v. Peters, 611 So.2d 191, 193 (La.App. 5 Cir.1992); State v. Moore, 595 So.2d 334, 337 (La.App. 3 Cir. 1992). The trial court's ruling on payment of restitution does not comply with Article 895.1(A) and we therefore remand for the trial court to determine the manner in which restitution should be paid, either in a lump sum or in monthly installments, based on the defendant's earning capacity and assets in accordance with Article 895.1.

ASSIGNMENT OF ERROR NUMBER FIVE
The defendant argues that trial counsel was ineffective for failing to request a jury charge as to the elements of LSA-R.S. 14:68.4, unauthorized use of a motor vehicle. The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is *89 most appropriately addressed through an application for post-conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355, 359 (La.1987); State v. Campbell, 97-369 (La.App. 5 Cir. 11/25/97), 703 So.2d 1358, 1360. It is well settled, however, that where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780, 787 (La.1993); State v. Campbell, supra. Because the instant record is adequate for this purpose, we will consider Alexander's ineffective assistance claim.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042, p. 9 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055. To show "prejudice" as required in order to establish ineffective assistance of counsel, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; State v. Soler, supra. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983). Because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must be specific to the facts of the case. State v. Peart, supra.
The defendant argues that his trial counsel was ineffective for failing to request a specific jury charge as to the elements of 14:68.4, unauthorized use of a motor vehicle. The defendant argues that this charge was appropriate because the evidence at trial supported a verdict of unauthorized use of a motor vehicle.
A requested special jury charge shall only be given by the court if it does not require qualification, limitation, or explanation and if it is wholly correct and pertinent. State v. Hidalgo, 95-319, p. 5 (La.App. 5 Cir. 1/17/96), 668 So.2d 1188, 1192. Moreover, the judge must charge the jury with the applicable law and must provide the jury with a written list of verdicts responsive to each offense charged. LSA-C.Cr.P. art. 802, 809. State v. Pardon, 97-248, p. 10 (La.App. 5 Cir. 10/15/97), 703 So.2d 50, 59.
Here, the defendant was charged with a violation of LSA-R.S. 14:69, illegal possession of stolen things, not with the crime of unauthorized use of a motor vehicle. Additionally, the offense of unauthorized use of a motor vehicle is not responsive to the offense of LSA-R.S. 14:69. LSA-C.Cr.P. art. 815. Accordingly, we find that trial counsel was not deficient in his performance in failing to request the specific jury charge. This assignment lacks merit.
We have reviewed the record for error patent according to LSA-C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and State v. Godejohn, 425 So.2d 750 (La.1983). Our examination of the record in this case reveals no errors patent.
Therefore, after a review of the law and evidence, the defendant's conviction and sentence are hereby affirmed, but the case is remanded to the trial court with instructions to set payment of restitution either in a lump sum or in monthly installments in accordance with LSA-C.Cr.P. art. 895.1(A).
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] At this hearing, the trial court noted that defendant had paid all of the assessed fines and costs, as well as had written his essay and had completed his community service.