862 So.2d 170 (2003)
STATE of Louisiana
v.
David FORTIER.
No. 03-KA-882.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 2003.
*171 Paul D. Connick, Jr., District Attorney, Andrea F. Long, Terry M. Boudreaux, Gregory M. Kennedy, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Arthur A. Lemann IV, New Orleans, LA, for Defendant/Appellant.
*172 Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
Defendant, David Fortier, entered a plea of nolo contendere to a charge of theft of currency valued at over $1,000.00 from Cardiac, Thoracic, Vascular Surgery, Inc. The trial judge sentenced David Fortier to five years of imprisonment at hard labor. The judge suspended the sentence, placed David Fortier on five years of active probation, and ordered him to pay a $500.00 fine, plus court costs, and a $100.00 Commissioner's fee. Additionally, the trial judge ordered David Fortier to pay restitution in an amount to be determined at a restitution hearing. This appeal stems from the restitution hearing. For the reasons that follow, we amend the restitution order and remand this matter to the trial court for further proceedings.
FACTS:
The Bill of Information alleged that David Fortier's theft from Cardiac, Thoracic, and Vascular Surgery, Inc., (hereinafter "CTVS,") occurred between March 8, 1996 and November 7, 1998. At the restitution hearing, Morris Holmes, the administrator for CTVS, testified that David Fortier was the former administrator of CTVS. Mr. Holmes related that the accounting firm of Arthur Anderson had conducted an investigation into "irregular" payments at CTVS. Arthur Anderson generated a report of irregular and routine payments, and Mr. Holmes used this document to prepare a synopsis of the irregular payments that had directly and indirectly benefited David Fortier. The State introduced this document as Exhibit No. 1.
Mr. Holmes recounted that the investigation had revealed that David Fortier had used CTVS' funds for purposes that were unrelated to CTVS' interests, including that David Fortier had used funds of CTVS to finance a loan made by a business entity that he had created. Additionally, the investigation revealed that David Fortier had transferred CTVS' funds into his own personal account and into an account held jointly by him and Dr. Warren Gottsegen.[1] According to Mr. Holmes, the company suffered over two million dollars in losses between 1994 and 1999, with transactions attributable to David Fortier totaling $230,000.00. Mr. Holmes stated that the company ultimately settled with Dr. Gottsegen for $710,000.00. As a result of David Fortier's actions, Mr. Holmes explained that CTVS was seeking $391,111.46 in restitution, including $16,893.20 related to a Medicare seizure, $54,462.50 in accounting fees incurred by Arthur Anderson, and $79,763.65 in IRS interest.
At the conclusion of the hearing, the trial judge took the issue of whether the victim's accounting fees and legal fees should be included as part of the restitution. On January 9, 2002, the judge rendered a judgment setting the total amount of restitution at $298,096.59. The same day, a separate judgment was filed, ordering the defendant to pay as restitution $54,462.50 for the victim's accounting fees, but finding that the victim's legal fees were not permissible restitution.
Following the denial of his Motion to Reconsider Sentence, David Fortier filed this appeal.
LAW AND DISCUSSION:
On appeal, David Fortier contends the trial court committed reversible error by ordering him to pay restitution for damages *173 unrelated and remotely consequential to the criminal conduct.
David Fortier contends that the trial judge improperly awarded restitution for interest related to the Medicare seizure, the IRS interest, and the accounting fees incurred by the victim because these amounts are not attributable to David Fortier's alleged theft. The State responds that the trial judge did not abuse her discretion in setting restitution in this regard.
When a court places a defendant on probation, it may impose any specific conditions of probation reasonably related to rehabilitation, including a requirement that the defendant make "reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court." LSA-C.Cr.P. art. 895(A)(7). Items that may be included in restitution are listed in LSA-C.Cr.P. art. 895.1, which provides in pertinent part:
Art. 895.1. Probation; restitution; judgment for restitution; fees
A. (1) When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain. However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from the establishment of the restitution order as a civil money judgment provided for in Subparagraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.
Additionally, LSA-C.Cr.P. art. 895.1(B)(5) provides that, when the court suspends the imposition or execution of sentence and places the defendant on probation, the court may order, as a condition of probation, that the defendant pay an additional amount to compensate the victim for his loss and inconvenience. This amount "may be in addition to any amounts ordered to be paid by the defendant under Paragraph A herein."
First, David Fortier claims that the trial judge improperly ordered him to pay $16,893.20 that resulted from Medicare's withholding $150,000.00 from CVTS. Mr. Holmes testified that Dr. Gottsegen and other physicians previously owned a company named Vascular Labs. In the early 1990's, the company was sold to Fortier and Blum, which was a holding company comprised of Dr. Gottsegen and David Fortier. In 1996, Medicare audited Vascular Labs and discovered that Vascular Labs had overbilled Medicare in the amount of $150,000.00. Dr. Gottsegen later became a partner of CTVS, and David Fortier became its financial administrator. Because Vascular Labs did not have any Medicare payments to withhold, Medicare withheld the money from CTVS. Mr. Holmes explained that, if a physician does business at an entity that owes Medicare money, Medicare may withhold money from any entity that owes money to the physician.
Mr. Holmes testified that David Fortier was aware of the Medicare withholdings, which occurred between August of 1997 and September of 1997. In addition to the $150,000.00 payments withheld, Medicare charged CTVS $10,704.31 in interest. Although Dr. Gottsegen ultimately repaid the principle, the Medicare interest and *174 the unearned interest remained unpaid. According to Mr. Holmes, the total loss suffered by CTVS as a result of the Medicare offset was $33,786.40, representing approximately $22,000.00 in interest on its funds and $10,704.31 for the interest charged by Medicare. The amount sought by CTVS of $16,893.20 represented one-half of the total loss of the Medicare offset. Mr. Holmes testified that he learned that David Fortier had instructed one of Mr. Holmes' subordinates not to reveal the Medicare withholdings to anyone. David Fortier explained that he would replace the money with funds that Dr. Gottsegen owed CTVS.
David Fortier argues that any theft he may have committed did not cause the Medicare withholding. The State responds that CTVS could have mitigated its loss of interest on its funds if David Fortier had promptly disclosed the seizure. At the conclusion of the hearing, the trial judge ruled, with little explanation, that the loss incurred due to the Medicare offset was a "monetary loss" suffered by the victim as provided by LSA-C.Cr.P. art. 895.1.
We agree with David Fortier that the trial judge erred in including interest owed to Medicare as a result of the Medicare withholdings and unearned interest on the money withheld by Medicare to be paid as part of the restitution. In State v. Diaz, 615 So.2d 1336 (La.1993), the Supreme Court explained that article 895.1 is not to be used to provide criminal sanctions to collect civil damages, but rather is to be used to compensate the victim for pecuniary losses caused by the criminal activity of the defendant. Even Mr. Holmes characterized David Fortier's actions relating to the Medicare loss as a violation of his fiduciary duty by failing to disclose the situation relating to the withholding. Moreover, it was Dr. Gottsegen's presence at CTVS, not David Fortier's theft that triggered Medicare's ability to seize the funds from CTVS. We conclude that the interest related to the Medicare withholdings should not have been included in the restitution order.[2] Accordingly, the portion of the judgment ordering David Fortier to pay $16,893.20 for loss related to the Medicare withholdings is reversed and set aside.
David Fortier also contends that the trial judge should not have included as part of the restitution the $79,763.65 in interest that CTVS had to pay to the IRS. Mr. Holmes testified that CTVS had not Paid 1.2 million dollars in taxes between the fourth quarter of 1997 and the end of 1998. Mr. Holmes testified that as Chief Financial Officer and Comptroller of CTVS, David Fortier was responsible for paying the taxes for CTVS and that this penalty was a direct result of David Fortier's inaction. According to Mr. Holmes, CTVS did not have the funds to pay the IRS because of David Fortier's theft and that CTVS was unable to borrow funds, since David Fortier and Dr. Gottsegen had exhausted CTVS's $500,000.00 line of credit at Bank One. CTVS contends that David Fortier is responsible for this loss because he intentionally hid the IRS notices from the physicians in the practice.
As with the Medicare loss, we find that the trial judge should not have included the IRS interest in the restitution order. Mr. Holmes stated that "[i]t is speculative to tie it [the IRS interest] to the theft." Further, Mr. Holmes acknowledged that David Fortier breached his fiduciary duties by failing to pay the tax liability. The failure to pay the tax liability may *175 result in civil liability against David Fortier, but should not be included in the restitution payment, as per Diaz, supra. Accordingly, the portion of the judgment including the $79,763.65 in IRS interest in the restitution order is reversed and set aside.
David Fortier next contends that the trial judge should not have included the $54,462.50 in Arthur Anderson accounting fees in the restitution payments. Mr. Holmes testified that Arthur Anderson was hired to conduct an investigation as "a direct result" of David Fortier's actions. Further, Mr. Homes testified that the investigational accounting fees totaled approximately $108,000.00 and that the firm believed one-half of that amount, $54,462.50 was attributable to David Fortier.
Although Mr. Holmes initially stated that no fees for Arthur Anderson's tax preparation was included in this figure, Mr. Holmes later clarified that two payments to Arthur Anderson in the amounts of $24,975.00 and $4,200.00 had been included. On cross-examination, Mr. Holmes stated that he would "stipulate" that the $4,200.00 payment should be excluded. In fact, Mr. Homes stated that he thought the $4,200.00 payment to Arthur Anderson for tax preparation had been removed from the amount attributable to Fortier's actions. Mr. Holmes stated that he believed that the $24,975.00 should be attributed to David Fortier because he increased the difficulty of the tax preparation by destroying documents that were necessary to prepare the taxes.
David Fortier cites several federal cases for the proposition that accounting fees should not be included in a restitution order.[3] However, he does not mention that there are other federal cases that have included such costs, including United States v. Cummings, 189 F.Supp.2d 67 (S.D.N.Y.2002) in which the court included approximately 2.5 million dollars in restitution that the victim incurred to prepare financial documents after the discovery of crimes committed by defendant, the victim's Chief Financial Officer.
Moreover, LSA-C.Cr.P. art. 895.1(A)(1) requires the trial judge to order David Fortier to pay restitution when the victim suffers "any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property." Paragraph B(5) of the same statute allows the trial judge to order David Fortier to pay an additional amount to compensate the victim for his "loss and inconvenience." Considering that the accounting investigation was triggered by David Fortier's actions, we find that the portion of the accounting expenses related to the investigation was properly included in the restitution order. The trial judge correctly excluded portions of the accounting fees that were unrelated to Arthur Anderson's investigation in light of Mr. Holmes's concession that the fees were not attributable to David Fortier's theft. However, we find the trial court erred in failing to remove the $4,200.00 from the amount awarded for Arthur Anderson fees in light of Mr. Homes' testimony that the $4,200.00 was directly related to tax preparation services and that he thought that amount had been removed from the reimbursement request.
David Fortier also argues that the trial court committed patent error by failing to determine the manner in which the restitution should be paid as required LSA-C.Cr.P. art. 895.1. The State responds that the law requires the trial *176 judge to set a payment schedule in repaying restitution.
LSA-C.Cr.P. art. 895.1 provides the "restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant." In the present case, the trial judge ordered David Fortier to pay the entire amount of restitution by the end of his five-year suspended sentence, but did not specify the manner in which the payments were to be made. In State v. Alexander, 97-1199 (La.App. 5 Cir. 9/29/98), 720 So.2d 82, 88, writ denied, 98-3109 (La.4/9/99), 740 So.2d 628, this court vacated the defendant's sentence because the trial judge failed to set a determinate payment schedule for restitution payments. In that case, the defendant and the State stipulated that the amount of restitution was $1,290.00 and the trial court ordered the defendant to pay this amount during probation under the supervision of the probation department. The Alexander court concluded that the trial court's order did not comply with Article 895.1(A) and remanded for the trial court to determine the manner in which restitution should be paid, either in a lump sum or in monthly installments, based on the defendant's earning capacity and assets. (See also State v. Peters, 611 So.2d 191, 193 (La.App. 5 Cir.1992), in which this Court vacated the defendant's sentence because the trial judge failed to set a determinate payment schedule for restitution payments.)
Accordingly, this matter is remanded to the trial court for a determination of the manner in which restitution should be paid, either in a lump sum or in monthly installments, based on David Fortier's earning capacity and assets.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We first note that the commitment reflects that David Fortier entered an Alford plea[4], whereas the transcript reflects that he entered a plea of nolo contendere and that the trial judge accepted the plea pursuant to LSA-C.Cr.P. art. 893. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, on remand the trial court is ordered to correct the commitment to conform to the transcript.
It is further noted that the record does not reflect that the judgments setting restitution were pronounced in open court or that David Fortier was present when the trial judge issued the written judgments setting the restitution. According to LSA-C.Cr.P. art. 871(A), a "[s]entence shall be pronounced orally in open court and recorded in the minutes of the court." LSA-C.Cr.P. art. 835 requires the defendant to be present when sentence is pronounced in felony cases. Article 835 also provides that the defendant shall be resentenced when his presence is secured if a sentence is improperly pronounced in the defendant's absence.
In State v. Perrilloux, 99-1314 (La.App. 5 Cir. 5/17/00), 762 So.2d 198, 201, the trial judge issued a written judgment that, inter alia, amended the defendant's sentence. This Court found that the defendant had been sentenced in absentia in violation of LSA-C.Cr.P. art. 835, vacated the sentence, and remanded for resentencing.
In the present case, David Fortier's sentence was not pronounced orally in *177 open court and he was not present when the judgments setting the restitution were issued. Accordingly, this matter is remanded for resentencing in accordance with LSA-C.Cr.P. articles 835 and 871(A) and this opinion.
CONCLUSION:
For the foregoing reasons, this matter is remanded for proceedings in accordance with this opinion.
AFFIRMED IN PART; REVERSED IN PART; REMAND FOR FURTHER PROCEEDINGS.
NOTES
[1] It is noted that the transcript contains the spelling "Godsagen." However, the documents prepared by the victim reflect that the name is spelled "Gottsegen."
[2] It is noted that the record reflects that, at the time of the hearing, CTVS was pursuing a civil action against the defendant, David Fortier.
[3] United States v. Schinnell, 80 F.3d 1064 (5th Cir.1996), Ratliff v. United States, 999 F.2d 1023 (6th Cir. 1993), and United States v. Mullins, 971 F.2d 1138 (4th Cir. 1992).
[4] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).